1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SEQUOIA FORESTKEEPER, CENTER FOR BIOLOGICAL DIVERSITY and WESTERN WATERSHED PROJECT,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**KEVIN ELLIOTT, in his official capacity as Forest Supervisor for the Sequoia National Forest of the U.S. Forest Service , and the UNITED STATES FOREST SERVICE,**<br><br>**Defendants.** | **1:13-cv-1721  AWI JLT**<br><br>**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Doc. # 38** |

On September 25, 2014, the court issued a memorandum opinion and order granting summary judgment to defendants Kevin Elliott and United States Forest Service ("Defendants") against plaintiffs Sequoia Forestkeeper, Center for Biological Diversity and Western Watershed Project ("Plaintiffs").  Doc. # 37 (hereinafter, the "September 25 Order").  On October 23, 2014, Plaintiffs filed the instant motion for reconsideration of the court's September 25 Order ("Plaintiffs' Motion").  The parties' completed briefing on Plaintiff Motion and the matter was taken under submission as of December 1, 2014.  For the reasons that follow, the court will deny Plaintiffs' Motion for reconsideration.

//

//

**LEGAL STANDARD**

Plaintiffs designate their Motion as pursuant to Local Rule 230(j).  In reviewing its September 25 Order, the court recognizes that it granted summary judgment on all issues to Defendants and against Plaintiffs.  The fact that the court did not order the entry of judgment against Plaintiffs is an oversight.  The court finds that Plaintiffs' Motion is, in essence, a motion for relief from judgment and is therefore to be considered as pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Rule 60(b) permits a district court to relieve a party from a final order or judgment on grounds of:  "(1) mistake, inadvertence, surprise, or excusable neglect; (3) fraud . . . of an adverse party, . . . or (6) any other reason justifying relief from the operation of the judgment."  The motion for reconsideration must be made within a reasonable time, in any event "not more than one year after the judgment, order, or proceeding was entered or taken."  Id.

Motions to reconsider are committed to the discretion of the trial court.  Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C.Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (*en banc*).  To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987).  Rule 59(e) permits a court to alter or amend a judgment where there is clear error or the initial decision was manifestly unjust.

**DISCUSSION**

Plaintiffs contend that the September 25 Order contains two errors of law and three errors of fact.  The court will consider each contention, beginning with the contention of errors of law.

**I.  Errors of Law**

### A. *Misapplication of NEPA Standards Regarding Duty to Provide Information*

Plaintiffs contend that the court "misapplied the law by analyzing the wrong information and by focusing on Plaintiffs rather than the agency's duty to [inform] the public."  Doc. # 38 at 12:23-24.  Plaintiffs aver that "under NEPA, the Court should only examine whether [the

agency] provided sufficient information to allow for meaningful public review, not whether a particular plaintiff would have provided additional comments." Id. at 13:14-16. The court reviewed the available case authority examining an agency's duty to inform at pages 12 through 16 of the September 25 Order. For purposes of the court's analysis, the authoritative synthesis of existing case law on the issue is to be found in Bering Strait Citizens for Responsible Dev. v. U.S. Army Corps of Eng'rs, 524 F.3d 938 (9th Cir. 2008). The court quoted a portion of the holding in that case which provided that "[a]n agency, when preparing an [Environmental Assessment ("EA")], must provide the public with sufficient environmental information, considered in the totality of the circumstances, to permit members of the public to weigh in with their views and thus *inform the agency decision-making process*." Id. at 953 (italics added).

From the court's perspective, this holding means that any assessment of the sufficiency of information provided by an agency must be rooted in a practical evaluation of the extent to which the public has the opportunity to comment on aspects of the proposed action that are important to them and that the agency has the opportunity to consider those issues in making its decision. In practice, the court must accept the fact that there is no simple indicator of insufficiency of information provided to the public and look instead to *facts alleged by the party challenging the agency decision* that evince the alleged insufficiency. In a case, such as the one at bar, where the agency has provided *some* information and has interacted to some extent with the public, the court must look to the difference between comments the complaining party did make and what they contend they would have made if they had been otherwise informed in order to find evidence from which it can infer that the agency was unable to make an informed decision because it failed to provide sufficient information to the public.

Plaintiffs characterize the court's approach in this case as improperly focusing on the commentary provided by the members of the public rather than the quantity, quality and timeliness of information provided by the agency. The court must respectfully disagree. In order to give effect to the "totality of the circumstances" approach to the assessment of agency actions to inform the public as required by Bearing Strait the court concludes that it has no

choice but to focus on the extent to which the complaining party can allege its opportunity to comment on the proposed agency action was *materially* hampered by the agency's failure to inform if it is to find evidence that the agency did, in fact, fail to provide sufficient and timely information.  The court must therefore reject Plaintiffs' contention that it violated NEPA standards by improperly focusing on the extent to which Plaintiffs' ability to comment was impaired by Defendants' failure to provide timely information.

### B.  Erroneous Requirement for Showing of Substantial Impairment

Plaintiffs' second contention of erroneous application of a legal standard is related to their first contention.  As the court understands Plaintiffs' argument, the court erroneously looked to whether Plaintiffs alleged facts to show that, but for the lack of timely or complete provision information by the Defendants, Plaintiffs would have submitted comments presenting a "'seriously different picture of the environmental issue being contested.'"  Doc. # 38 at 17:1-2 (quoting the court's September 25 Order at 25).  Plaintiffs contend that the standard used by the court is not the standard accepted by the Ninth Circuit.  Rather, Plaintiffs contend that the standard is established by <u>Westlands Water Dist. V. United States DO</u>, 376 F.3d 853 (9th Cir. 2004), which held that a supplemental EIS is required where "a new proposal 'will have a significant impact on the environment in a manner not previously evaluated and considered.'" <u>Id</u>.  Plaintiffs contend, fundamentally, that the "Rancheria case is not about *contesting* whether the comments [by Plaintiffs] would 'present a seriously different picture' of the environmental issues,' but whether Plaintiffs and the public will be allowed to fully participate in the NEPA process."  Doc. # 38 at 17:5-7.

To the extent Plaintiffs contend they can successfully challenge Defendants' decision by showing Defendants violated NEPA solely by failing to timely provide information or by failing to provide a draft EA, that contention fails for much the same reason as discussed above.  It is uncontested that Defendants did provide pre-decisional information to the public and did provide opportunity to comment.  It remains this court's opinion that the holding in <u>Bering Strait</u> has the practical effect of imposing a materiality requirement on a party seeking to invalidate an agency

decision based on the alleged failure of an agency to timely provide information to the public. State differently, it is this court's opinion that, in giving consideration to "the totality of the circumstances" surrounding the participation of the public and the agency in the NEPA process, the court must require that a party challenging an agency decision on the basis of the *insufficiency* (as opposed to the non-existence) of the agency provision of timely relevant information or loss of ability to comment show that what the agency failed to provide resulted in an impairment of the flow of information to the agency such that the process of informed decision-making was compromised. Fundamentally, the court interprets NEPA's processes to be in service of the ultimate goal of informed agency decision making, not public participation in some abstract sense. Before this court can see its way clear to unwind the decision made by the Forest Service, Plaintiffs must show that the public's loss of opportunity to participate materially impaired the process of informed decision making. Correspondingly, it is the court's opinion that Plaintiffs cannot carrying their burden to show impairment of the decision making process by merely showing that the public could have had a more robust opportunity for comment had Defendants issued a draft EA or more time scientific studies.

The court recognizes that standards are yet to be established to make a clear distinction between adequate and less-than-adequate levels of agency interaction with the public in the NEPA process. In the context of a motion for summary judgment, however, the court must look for some standard of insufficiency that is amenable to definition. The standard of less-than-the-plaintiff-would-have-preferred does not fill that need because there is no clear decisional point. While reasonable minds could differ, this court remains of the opinion that a plaintiff seeking to invalidate an agency decision has the burden to show the materiality of the agency's failure to provide information or a particular opportunity for comment by the public.

The court concludes that Plaintiffs' contention that the court employed erroneous standards of law is not supported.

//

//

-5-

## II. Errors of Fact

### A. Statement of Defendants' Intent to Release Draft EA

Plaintiffs' first allegation of clear error of fact focuses on whether the court recognized that Defendants had announced its intention to issue a draft EA to Plaintiffs and other participants and had informed them that they would take further comments following the issuance of the Draft EA.  At page 19 of the September 25 Order the court noted that it was "Plaintiffs' primary contention with regard to the scoping process [ ] that Forest Service communicated the intention of Forest Service to issue a Draft EA following which Plaintiffs would be permitted to submit further comment."  The court recognized documents submitted by Plaintiffs in support of their allegation; although not the public comments allegedly made by Forest Service at the scoping meeting.  The court opined that, based on the documents reviewed it was not clear from that the statements by Forest Service were intended for public consumption or whether they simply represented internal process documents.  Id. at 19-20.

The court did not give much consideration to the effect of Defendants' reversal of course except to find that Plaintiffs had failed to state with any specificity how the failure of Defendants to issue a Draft EA had resulted in a material impairment in the process of informed decision making.  The court expressed no doubt that Plaintiffs may have had a subjective expectation of a further opportunity to "weigh in" by way of comments on a draft EA, but based its decision on the finding that Plaintiffs had not carried the burden previously discussed to show the materiality of Defendants unexpected denial of the opportunity for further input.  In that sense, whether Defendants had created a false expectation of a further opportunity to weigh in is/was irrelevant to the court's determination.  It was and remains the court's conclusion that Plaintiffs' argument for summary judgment failed because Plaintiffs could not show that Defendants conduct ultimately resulted in uninformed decision making by Defendants.

### B. Additional Input Planned by Plaintiffs

Plaintiffs next contend that the court was clearly erroneous when it concluded that Plaintiffs had failed to identify additional information or comment that they would have

provided to Defendants had they been permitted to comment on a Draft EA.  Plaintiffs identify

five issues that were identified in their cross-motion for summary judgment that they would have

commented on had the opportunity been provided.  Plaintiff's pleading states that these five

issues/items were identified in the administrative appeal taken by Plaintiffs following the

issuance of the Finding of No Significant Impact ("FONSI") by Defendants.  The items

identified are:

1.  Plaintiffs wished to comment on the "Regional Forester's sensitive species list for plants
    as well as the California Natural Diversity Database's records of a rare plant[s] that
    occurred in the project area, which were not documented properly in the EA."

2.  Plaintiffs wished to point out that, without the wildlife biological evaluation, they "could
    not adequately comment on the cumulative effects to the Pacific fisher when the
    Rancheria Project was combined with other projects in the vicinity of the proposed
    action."

3.  Plaintiffs wished to point out that "'it is more likely than not that that the [Fish and
    Wildlife Service] will actually provide the Pacific fisher with the full protection it needs
    under the ESA."

4.  Plaintiffs wished to point out there were/are "four grazing allotments in the project area,
    and that the analysis should have considered and analyzed the cumulative effects from
    grazing on reforestation and other resources as required by the Forest Service Manual."

5.  Plaintiffs wished to point out "how both the EA and the specialists' reports misrepresent
    or dismiss scientific studies used in the project's design, while overstating the potential
    adverse effects from fire and minimizing fire's potential beneficial effects."

Doc. # 38 at 9 (quoting Plaintiffs' response-reply, Doc. # 26 at pages 9-10.

The third and fifth items Plaintiffs contend they were prevented from putting before

Defendants pre-decisionally require little comment.  As to the listing of the Pacific fisher under

the Endangered Species Act, footnote 1 at page 9 of Plaintiffs' Motion states that the Pacific

fisher was, in fact, listed under the ESA and that the "listing decision now will require the Forest

Service to conference with the U.S. Fish and Wildlife Service before proceeding with the Rancheria Project." Id.  The court did not consider the prevention of Plaintiffs' comment regarding the potential listing of the Pacific fisher as material to the agency decision-making process because, as Plaintiffs explain in their footnote, the significance of the listing or the proposal for listing is that it triggers the required further consideration of the effects on the newly listed species independently of the NEPA process.  The court generally avoids speculation whenever possible and particularly where, as here, the contingent facts alleged will, if true, give rise to consequences independent of the proceeding in the court.  The court therefore did not consider the facts relating to the potential listing of the fisher as endangered or threatened as relevant to the matter before the court at the time.  The passage of time indicates there this approach was not clearly erroneous.

    With regard to Plaintiffs' stated wish to point out the alleged misrepresentation or dismissal of scientific studies, the court gave consideration to that argument at page 24 if the September 25 Order.  The court concluded that the Administrative Record established that Plaintiffs' viewpoint on the beneficial effects of fire was adequately conveyed to Defendants and Defendants view on the same subject was adequately conveyed to Plaintiffs.  As the court concluded, when the record reflects that the NEPA process permits the public to place its arguments before the agency, but it does not guarantee that the agency's decision will be in accord with the public's view, or even with weight of scientific authority on any particular subject.  It is evident from the review of the AR that, in formulating its decision to use mechanical thinning of commercially valuable trees, Defendants were responding not only to the weight of scientific evidence with regard to the detrimental effects of intense fire within fisher habitat areas but also to political pressure to take the financially prudent option and to prevent threats from intense fire to the human habitat.  That agencies should be required to look to financial and political realities in addition to scientific opinion is to be expected in the NEPA process.

The fact Plaintiffs were unable to communicate their concerns regarding cumulative effects on Pacific fishers resulting from other projects as expressed in the second and fourth items in the above list are also not persuasive reasons for invalidating Defendants' choice of options.  Defendants addressed cumulative effects from other projects in the vicinity at pages 51 through 55 of the EA.  The table that summarizes all of the areas or projects in the vicinity, Table 6 of the EA (AR 20292-0296) includes the four grazing allotments within the project area as well as biomass treatment prescriptions on adjacent past, present and future treatment areas. The EA concluded that the current project, when considered in conjunction with the other listed past, present or future projects, would not "jeopardize the continuing existence of any fish, wildlife, or plant species or designated critical habitat listed for protection under the Endangered Species Act.

Plaintiffs allege they could not comment on the cumulative effects on fisher populations without the Wildlife Biological Evaluation, but do not explain how, or in what way, their lack of opportunity to comment resulted in uninformed decision making by Defendants.  Similarly, Plaintiffs contend that they would have pointed out that there are "four grazing allotments in the project area, and that the analysis should have considered and analyzed the cumulative effects from grazing on reforestation and other resources . . ." but Table 6 lists the grazing allotments as part of the cumulative effects studied in the EA.  Again, Plaintiffs fail to show how Defendants' determination with regard to the four grazing allotments was uninformed or that Plaintiffs' ability to comment on those allotments would have substantially changed Defendants' understanding of the consequences of their choice.

Finally, Plaintiffs first item listed above alleges they wished to comment on the "Regional Forester's sensitive species list for plants as well as the California Natural Diversity Database's records of a rare plant[s] that occurred in the project area, which were not documented properly in the EA."  The court admits it does not recall giving consideration to this claim in the process of formulating its September 25 Order.  However, on giving consideration to the issue now, the court concludes that the fact that Plaintiffs were denied the opportunity to

comment on the aspect of the EA has no obvious connection to Defendants selection of any of the options under consideration.  It is therefore impossible to see how the loss of the opportunity to comment on the improper documentation of rare plants in the area would have in any way given rise to uninformed decision making by Defendants.

The court concludes that, to the extent the court's September 25 Order may not have reflected adequate consideration of the specific the issues it would have raised to Defendants had Defendants issued a Draft EA or otherwise permitted additional comment, the issues raised by Plaintiffs do not raise to the level of error requiring reversal of the court's opinion for the reasons stated.

### C. Erroneous Finding that Plaintiffs Did Not Dispute Defendants' Characterizations.

Plaintiffs' final contention of clear error is that the court erroneously characterized Plaintiffs' reaction to the Scoping Proposal and erroneously assumed the availability of the Conservation Biology Institute's report on impacts on the species in the Southern Sierra Nevada (Spencer et al., 2008).  In the September 25 Order, the court stated:

> Plaintiff also points out that the Scoping Proposal points the reader to "the Conservation Biology Institute's report on impacts on the species in the Southern Sierra Nevada (Spencer et al., 2008), and specifies the treatment prescriptions for this habitat, including retention of snags and potential nesting sites."  Doc. # 23-1 at 8:7-10.  Plaintiffs do not dispute any of Defendants characterizations and the court finds Defendants' characterization is essentially accurate.

Doc. # 37 at 19:2-8.  In the September 25 Order this passage ends with a footnote that states, "The document referred to as 'Spencer et al., 2008' is represented in the Excerpts of the ER by its cover page only.  There being no allegation to the contrary, the court presumes the document was available to Plaintiffs either directly from Defendants or online."

As the court understands Plaintiffs' Motion, it is Plaintiffs' contention that the court erroneously determined that Plaintiffs had not disputed Defendants' representation that the Spencer et al., 2008 document (hereinafter, the "Spencer report") adequately describes the

1
2
3
4
5
6
7
8

effects of the Rancheria Project on the specific fisher population within the project area. Plaintiffs state in their Motion that it was (and remains) their expressed contention in their cross-motion for summary judgment that "[n]othing in the Spencer report can be used to disclose the necessary environmental impacts from the Rancheria Project on the fisher because the report is too general in nature and does not show specific impacts from the project on unique fisher habitat in the part of the Sequoia National Forest and in the Greenhorn Mountains where the project is located."  Doc. # 38 at 11:25-28.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

        The court, upon review of the portion of the September 25 Order quoted above, recognizes there is an ambiguity with regard to what it found Plaintiffs did not dispute.  The court's intention was to note that Defendant's representation of what the Spencer report said – that fisher habitat required the "retention of snags and potential nesting sites" – is accurate in the sense that the Spencer report actually conveyed that statement and other statements that were referenced by Defendants.  The court did not intend to state or suggest that Plaintiffs were in agreement with the proposition that the Spencer report was specific as to effects on fishers in the Project area or that Plaintiffs agreed with the Spencer report's conclusions in any particular including what the Spencer report may have concluded regarding  the effects of very intense fires.  Nor was it the court's intention to state that the court was in agreement with Defendants regarding the conclusions Defendants may have drawn from the Spencer report.  Is sum, it was the court's intention to indicate that, in general, what Defendants claimed the Spencer report said, the court agreed it said.  To the extent the court has or had any agreements with Defendants regarding the Spencer report, the court agreed only that the Spencer report was an appropriate document to reference in a project scoping document.

27
28

        Plaintiffs' second contention is that the court was clearly erroneous when it assumed in the footnote that the Spencer report "was available to Plaintiffs either directly from Defendants

or online."  Plaintiffs allege that "the Spencer report is *not* available online (*see* http://scholar.google.com; searching for 'Baseline Evaluation of Fisher Habitat and Population Status' only produces a citation to the report but not the report itself.)"  Doc. # 38 at 12:4-6 (italics in original).  Defendants allege they would have provided a copy of the document had anyone asked for it and contend further that the report *is* available through Google Scholar upon entry of the word string quoted above.  The court had tried the above-quoted citation and finds the report is available although through subscription to Google Scholar and may be behind a paywall.  In any event, Plaintiffs do not allege that they, or any other member of the public, requested a copy of the study or more information on how to access it from Defendants and were refused.

The court concludes the court was not clearly erroneous with regard to its conclusions regarding the Spencer report.


The court concludes that Plaintiffs have failed to show the court's September 25 Order contained any error of law or that it relied upon facts that were clearly erroneous.  THERFORE, it is hereby ORDERED that Plaintiffs' request for reconsideration of the court's September 25 Order is hereby DENIED.


IT IS SO ORDERED.

Dated:  __March 31, 2015__                    _____
                                              SENIOR  DISTRICT  JUDGE