1

2

3

4

5

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

6

7

8

9

10

11

12

13

14

15

16

| | |
|---|---|
| **SEQUOIA FORESTKEEPER, CENTER FOR BIOLOGICAL DIVERSITY and WESTERN WATERSHED PROJECT,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**KEVIN ELLIOTT, in his official capacity as Forest Supervisor for the Sequoia National Forest of the U.S. Forest Service , and the UNITED STATES FOREST SERVICE,**<br><br>**Defendants.** | **1:13-cv-1721  AWI JLT**<br><br><br><br>**ORDER AFFIRMING DEFENDANTS' BILL OF COSTS**<br><br><br>**Doc. # 47** |

17      Currently before the court is the objection of plaintiffs Sequoia Forestkeeper, Center for

18 Biological Diversity and Western Watershed Project ("Plaintiffs") to the bill of costs submitted

19 by defendants Kevin Elliott and United States Forest Service ("Defendants") following the

20 decision of the court granting Defendants summary judgment.  Doc. # 37.  The parties

21 acknowledge that Defendants cost bill lists costs in only one category in the sum of $2,186.65.

22 The category of costs is "Fees for exemplification and costs of making copy of any materials

23 where the copies are necessarily obtained for use in the case."  Doc. # 46.

24      Pursuant to 28 U.S.C. § 1920, the prevailing party in a civil case can recover its

25 reasonable costs.  The statute enumerates the categories of expenses that may include "costs."

26 Pursuant to section 1920(4) the list of costs expressly includes costs related to "exemplification."

27 Plaintiffs contend the costs listed are not compensable under section 1920(4) because they were

28 not for exemplification but "the *labor* of creating an electronic administrative record of the

agency's decision, specifically, 'PDF processing' and 'digital labor.'" Doc. # 47 at 2:13-15 (italics in original).  Defendants contend they "only requested costs associated with "the electronic copying of the Administrative Record [("AR")] including such tasks as scanning, duplicating, collating, Bates stamping and hyperlinking." Doc. # 48 at 2:12-13.  In the alternative, Plaintiffs urge that, because the suit sought citizen enforcement of NEPA provisions and was brought by "non-profit organizations acting to further the public interest, the court "should exercise its discretion and disallow such costs" because imposition of the costs would have a "chilling effect on subsequent public interest litigation." Doc. # 47 at 3:10-17.

With regard to allowable costs, Plaintiffs cite Tahoe Tavern Property Owners Assoc. v. United States Forest Service, 2007 U.S. Dist. LEXIS 45833 (E.D. Cal. 2007) at *5 for the proposition that "labor costs associated with preparing the administrative record are not included" within any of the categories made compensable by section 1920.  Likewise, Plaintiffs cite Race Tires, Am., Inc. v. Hoosier Racing Corp., 674 F.3d 158, 169 (3rd Cir. 2012) and Country Vintner of N. Carolina, LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 259-260 (4th Cir. 2013) for the proposition that "services 'leading up to the actual production' do not constitute making copies and thus are not recoverable under § 1920." Doc. # 47 at 2:25-26. Plaintiffs basic contention is that "'PDF Processing' and 'Digital labor'" do not constitute activities related to "copying" within the meaning of section 1920(4) and that Defendants are not entitled to compensation for such costs.

The court disagrees.  Since the switch to electronic filing, the reduction of voluminous records, which is a normal characteristic of administrative records in NEPA cases, to digital format is a normal practice the court heartily endorses.  The court can see no logical difference between the labor and supplies involved in feeding the pages of an administrative record, which in its original form is always an assemblage of individual documents on paper, into a digital scanner rather than into a copying machine.  In both cases the labor of producing the administrative record in the first instance is not included in the copying costs and the product of the process which the court receives is a *copy* of the original record; whether it is on paper or on

a plastic disc.  From the court's perspective, any distinction between preparation of a digital copy and a paper copy for purposes of section 1920(4) is arbitrary and serves only to subvert the court's strong preference for the reduction of paper copies.  The fact that some degree of labor goes into digitalizing and hyperlinking the record's table of contents and/or any indices that may be present in the original record does not change the court's opinion.  In any case, what the court receives is a *copy* of a previously prepared record.  It is this court's opinion that any functional enhancements, such as hyperlinking, that normally accompany a *digital copy* of an administrative record are an integral part of the process of *copying* and are thus recoverable under section 1920(4).

     With regard to the equities of taxation of costs against Plaintiffs, both parties acknowledge that consideration of five factors is appropriate: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties."  Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1247-1248 (9th Cir. 2014).  As Defendants point out, "Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, requiring the losing party to show why costs should not be awarded."  State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 723 (9th Cir. 2005).  Seen in this light, the five factors listed are bases for departure from the norm when the balance of equities so requires.

     At the outset it is clear in this case that some factors do not favor exception to the general rule of loser pays costs.  The cost amount requested by Defendants is quite modest and, as Defendants point out, Plaintiff Center for Biological Diversity is an organization of considerable size backed by substantial financial and human resources.  Thus the fourth and fifth factors listed above do not militate in favor of Plaintiffs.  As to the first factor, consideration of whether there was substantial public importance to the case does not clearly favor Plaintiffs since the issues being weighed – preservation or improvement of habitat for threatened or endangered species versus appropriate level of management of risk of severe fire – are both of considerable public

1
2
3
4
5
6
7
8
9
10
11

importance and both sets of interests were asserted by both sides albeit using different criteria. As to the closeness of the case, it may be said that the case involved the resolution of a close issue in the sense that the procedural sufficiency (or wisdom) of Defendants' decision to not issue a draft Environmental Assessment after having made some indication that they would do so was tested and found to be a close one.  However, the substantive question that is central to all NEPA cases – whether the agency made a decision that was fully informed by input from the public on issues within the scope of the project – was not a particularly close call.  Thus, the factor of the closeness of the Plaintiffs challenge does weigh in favor of Plaintiffs but not as heavily as would be the case if the issue that was close had been substantive rather than procedural.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        Plaintiffs' argument places primary emphasis on the tendency of taxing costs against plaintiffs to chill public participation in decision regarding important environmental decisions. The suggestion that arises from Plaintiffs' argument is that all taxation of costs to the losing party in environmental cases such as this can be considered "chilling" inasmuch as the shifting of costs to the challenging party is always a disincentive to bringing a challenge to some extent. The court has a somewhat contrary view of the purpose and effect of taxing costs against losing plaintiffs in cases such as the one at bar.  It bears noting that lawsuits seeking relief under NEPA or CEQA do not result in the transfer of wealth from one party to another; neither is the award of attorney fees common.  It is also the case that the "typical" NEPA case is funded by at least one large environmental organization that has attorneys on its staff and budgets to provide the legal and financial resources needed to press legal challenges against government agencies whose actions (or lack of actions) the environmental organization disagrees with.  None of this is improper. However, it is important to the efficient functioning of society, and to the judiciary in particular, that recourse to the courts to resolves disputes is not seen as an approach that is as good as any other.  From a social perspective, the solution derived from negotiation and agreement between all stakeholders outside of court is much to be preferred over the solution that comes out of court proceedings.  The allocation of costs against the losing party in cases

such as the case at bar is an attempt to reflect the difference in social value of solutions reached outside of court with those that require the marshaling of court resources.  To put it bluntly, it is important to the efficient functioning of society and the courts that when parties in dispute seek to resolve their differences they look at courts as a forum that is second-best to more informal and inclusive forms of dispute resolution.  The shifting of costs to the losing party is an important means of maintaining this distinction.

From the court's perspective, the result of shifting costs to the losing party is not a "chilling factor" simply because the costs are shifted.  The shifting of costs to the losing party can only be said to be "chilling" only if, in consideration of the factors set forth in <u>Escriba</u>, the value of cost shifting as a means of encouraging informal negotiation and resolution of the dispute is overwhelmed by burdens on the plaintiff that would otherwise prevent access to the courts when no other means of resolution is workable.  Seen in this light, consideration of the factors in <u>Escriba</u> is a "safety valve" that can relieve the burdens of shifting costs against the losing party where the burden caused by the shifting is so extreme that the fundamental right to access to the courts by potential plaintiffs that are similarly situated would be threatened.  In this case, the court finds that the burden imposed on Plaintiffs from the shifting of $2,186.65 in litigation expenses is well within the range of burdens that are justified by the salutary goal of encouragement of private settlement without imposing or threatening a significant barrier to access to the court.

For the reasons set forth above, it is hereby ORDERED that Plaintiff's objection to Defendant's bill of costs is hereby OVERRULED.  Plaintiffs are hereby ORDERED to PAY Defendants the amount requested in Defendants' Bill of Costs.

IT IS SO ORDERED.

Dated:   September 4, 2015          _____

SENIOR  DISTRICT  JUDGE